UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMLY MILAVONG,<br><br>             Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No.  1:24-cv-00278-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 15, 19) |

**INTRODUCTION**

Plaintiff Samly Milavong ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under Title XVI of the Social Security Act.  The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.  (Docs. 15, 19.)  Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence in the record and was not based upon proper legal standards.  Accordingly, this Court will recommend reversing the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff applied for Title XVI Supplemental Security Income on February 15, 2019, alleging that she became disabled on June 1, 1998. AR 210, 212-21.[1] The claim was denied initially on June 26, 2019, and on reconsideration on December 17, 2019. AR 78-82, 94-99. Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Shiva Bozarth held a hearing on January 26, 2023. AR 41-57. ALJ Bozarth issued an order denying benefits on the basis that Plaintiff was not disabled on June 26, 2023. AR 15-35. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied. AR 1-6. This appeal followed.

**January 26, 2023 Hearing Testimony**

ALJ Bozarth held a telephonic hearing on January 26, 2023. AR 41-57. Alina Sala, EdD, an impartial vocational expert, also appeared and testified. AR 53-56. Plaintiff's attorney Jonathan Pena and interpreter Sam Vongsanit were also present. Plaintiff's attorney confirmed that the record was complete, and the ALJ entered Exhibits 1A to 5F into evidence. AR 44. Plaintiff's attorney further confirmed that he had explained the implications of a *Chavez* denial. *Id.*

Upon examination by the ALJ, Plaintiff testified that she did not recall when she last worked, and that she had not worked the prior year. AR 46. Plaintiff further testified that she did not go to school and could not read or write. *Id.* The ALJ noted that they would consider Plaintiff as having no prior relevant work and being illiterate. *Id.* Plaintiff testified that she lived in Mr. Crumb's farm at 3885 Adam. AR 46-47. Plaintiff said that she had to work on the farm to get to stay there and would pick fruit and eggplants. AR 47. Plaintiff said that she did farm work all year long and was brought food in her house. AR 47-48.

Upon examination by her attorney, Plaintiff testified that she stayed in a room for herself and lived with four other people in a one-bedroom house. AR 48. Plaintiff said that her home had running water, running lights, and the essentials. AR 49. Plaintiff said that she could determine how many hours she worked on the farm and would work at least two hours per day and that she could work

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

every day if she wanted. *Id.* She testified that her food stamps were discontinued and that she had moved to the farm in January 2022. AR 49-50. Plaintiff said that she could not work full time because her right ankle hurt constantly and that she took Tylenol for the pain. AR 50. She testified that she went to the doctor once to get the ankle treated. AR 50. Plaintiff rated her pain as a "two" on a scale of one to ten. AR 51. She said that her back pain had not gotten better and that she had an x-ray and a nerve conduction study done but did not go through a tube. *Id.* Plaintiff testified that her ankle pain limited her ability to work on the farm, as she was no longer able to carry sticks or wood fences. *Id.* She said that during her two-hour shifts, she would take a break, and that she could work up to two hours before her ankle hurts and she would need to stop and lay down. AR 52. She said that sometimes she could only work two hours per day and would take medication for the pain. *Id.* Plaintiff testified that she could take care of her own personal needs, such as bathing and putting on her clothes, but that if she was "hurting a lot" then she would not do those tasks. *Id.*

  Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") Dr. Alina Sala. AR 53-56. The VE testified that she could be an impartial witness, and Plaintiff's attorney did not object to the VE's qualifications. AR 53. The VE stated that she would inform the ALJ if her opinions differed from the Dictionary of Occupational Titles ("DOT") and why her opinion differed from the DOT. *Id.*

  The ALJ then asked the VE questions regarding a hypothetical individual and asked the VE to assume an individual who would be limited to simple work instructions; only occasional contact with coworkers and supervisors; would not work in a team work setting; and no contact with the general public. *Id.* The VE testified that there would be work that such an individual could perform in the national economy, including: Sweeper/Cleaner (DOT No. 389.683-010, SVP 2, medium, with 92,000 jobs in the national economy); Stores Laborer/Warehouse Worker (DOT No. 922.687-058, SVP 2, medium, with 68,000 jobs nationally); Change House Attendant/ Dry Janitor (DOT No. 358.687 010, SVP 2, medium, with 17,000 jobs nationally). AR 54.

  For the second hypothetical, the ALJ asked to add to the first hypothetical individual's limitations that the individual would be absent from work two days per month on an unscheduled basis. *Id.* The VE testified that such an individual would not be able to sustain competitive

employment in the national economy. *Id.* For the third hypothetical, the ALJ asked the VE to add to the first hypothetical individual's limitations that they would need two 15-minute breaks per day in addition to those breaks normally and regularly scheduled throughout the day. *Id.* The VE testified that such an individual would not be able to sustain full-time employment in the national economy. *Id.* Plaintiff's attorney then asked if the VE were to add to the first hypothetical that the individual would be off-task 15% of the workday. AR 55. The VE testified that such an individual could not perform any work. *Id.* The VE testified that her testimony about off-task, absences, and additional breaks was based upon her years of training, education, and experience, and that her testimony about the incidents of job numbers in the national economy was based in part upon sources that were generally and reasonably relied upon by experts in her field. *Id.* The VE further stated that her testimony was within a reasonable degree of professional certainty. *Id.*

The ALJ then discussed Plaintiff's psychiatric CE with Plaintiff's attorney, noting that she was unsure of the status as they had "a finding of a full scale IQ below but then… it says not applicable." *Id.* The ALJ noted that Plaintiff was given a WAIS IV instead of a CTONI but the ALJ did not see evidence to support severe impairments, but would send Plaintiff out for a psychiatric CE. AR 56. The ALJ then requested that Plaintiff's attorney get an accurate address for Plaintiff as all prior mail for Plaintiff had been returned for two years as undeliverable. *Id.* The ALJ additionally requested that Plaintiff's attorney clarify why the ALJ should not find a step one problem. *Id.*

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-35. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of February 15, 2019. AR 20. The ALJ identified the severe impairment of borderline intellectual functioning, and noted that Plaintiff's alleged remote injury of her left ankle was not a severe impairment. AR 20-21.

4

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except that Plaintiff had nonexertional limitations that "she can perform simple work instructions with occasional contact with supervisors and coworkers, but not in a teamwork setting, and she can have no contact with the general public." AR 23. The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as well as "medical opinion(s) and prior administrative medical finding(s)." *Id.*

The ALJ found that Plaintiff had no past relevant work, was defined as a younger individual age 18-49, and was considered an illiterate person because she could not read or write a simple message in any language. AR 29. Given Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and RFC included: (1) sweeper cleaner (DOT No. 389.683-010, with 92,000 jobs in the national economy); (2) Laborer Stores (DOT No. 922.687-058, with 68,000 jobs in the national economy); and (3) Change House Attendant (dry janitor) (DOT No. 358.687-010, with 17,000 jobs in the national economy). *Id.* The ALJ therefore concluded that Plaintiff had not been disabled since the application date of February 15, 2019. AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.,*

5

*Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[2]

Plaintiff argues that the RFC is not supported by substantial evidence, as the ALJ failed to account for limitations opined by Dr. Briahnne MacPherson. (Doc. 15 at 7-12.)

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them." *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020), citing *Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580 (9th Cir. 2012) (unpublished) ("The

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

administrative law judge (ALJ) erred when formulating Martin's residual functional capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it.") and *Neufeld v. Berryhill*, No. 2:16-cv-03644 (VEB), 2018 WL 4739699, at *6 (C.D. Cal. Sept. 30, 2018) ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them."); see also *Bain v. Astrue*, 319 F. App'x 543, 545-46 (9th Cir. 2009) (holding ALJ erred in not including consultative examining psychologist's moderate limitations in the RFC, despite specifically crediting these limitations in the opinion); *Flores v. Saul*, No. 1:18-cv-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020) (finding ALJ erred by assigning great weight to consultative psychologist's opinion, but failing to provide specific and legitimate reasons for rejecting significant portions of the opinion); *Wascovich v. Saul*, No. 2:18-cv-659-EFB, 2019 WL 4572084, at *3-*5 (E.D. Cal. Sept. 20, 2019) (finding ALJ erred by assigning substantial weight to consulting examiner's opinion that the plaintiff had a mild to moderate impairment in her capacity to maintain regular attendance, but failed to account for the limitation in the RFC); *Harrell v. Kijakazi*, No. 1:20-cv-00614-GSA, 2021 WL 4429416, at *4 (E.D. Cal. Sept. 27, 2021) ("The ALJ was under no obligation to accept a medical opinion he found unsupported by the record. But, having clearly stated that he was according [the physician]'s opinion great weight, the ALJ was under an obligation to account for the moderate limitations [the physician] identified irrespective of the broader reasoning in support of the RFC.").  An ALJ errs when they do not explain why they did not adopt all findings or limitations from a persuasive opinion. *Patterson v. Comm'r of Social Sec.*, No. 2:23-cv-00635 AC, 2024 WL 4216810, at *8 (E.D. Cal. Sept. 17, 2024)

In examining whether RFC limitations account for some opined non-exertional limitations, the Ninth Circuit has held that an "ALJ's RFC finding properly incorporated the limitations… related to pace and the other mental limitations regarding attention, concentration, and adaption." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  However, courts in this circuit have split on whether RFC limitations to simple/routine tasks with limited public contact account for all moderate non-exertional limitations. *Macias v. Saul*, No. 1:19-cv-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases and noting that "Courts have rejected the argument that a similar

7

limitation to simple tasks in the RFC adequately accounts for moderate limitations in the ability to maintain regular attendance or complete a normal workday."). Courts within this district have recently noted that the district court case law "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations… identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption." *Harrell*, 2021 WL 4429416, at *6; *Lamar v. Comm'r of Soc. Sec.*, No. 1:24-cv-00504-EPG, 2025 WL 318294, at *4 (E.D. Cal. Jan. 28, 2025) (noting split and finding that limitations in RFC did not account for all moderate limitations opined by physician); *Berenisia Madrigal v. Saul*, No. 1:18-cv-01129-SKO, 2020 WL 58289, at *5-6 (E.D. Cal. Jan. 6, 2020) (finding that ALJ's RFC of simple, routine tasks with limited peer and public contact did not account for opined limitations in "completing a normal workday or work week due to her psychiatric condition, moderate difficulties dealing with stress and changes encountered in the workplace, and an up to moderate likelihood that she would emotionally deteriorate in a work environment").

Here, in a medical source statement from an April 23, 2023 examination report, Dr. Briahnne MacPherson, Psy.D, noted that Plaintiff had moderate limitations in the ability to understand, carry out, apply, and remember, simple (one-two step) repetitive written and oral instructions; ability to understand, carry out, apply, and remember, complex detailed written and oral instructions; ability to sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace; ability to maintain effective social interaction on a consistent and independent basis with others including supervisors, co-workers, and the public; and ability to adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek; and responding and adapting appropriately to changes in a work setting. AR 398 (also noting that "Claimant's difficulties with persistence and limited ability to understand complex instructions would contribute to struggles managing typical situational stressors without interruption in the workweek in most job settings"). Dr. MacPherson also noted that Plaintiff was not able to handle funds in her own best interest. *Id.* Dr. MacPherson further completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) dated April 30, 2023, in which Dr. MacPherson

marked that Plaintiff was moderately limited in the ability to: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; understand and remember complex instructions; carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public interact appropriately with supervisor(s); interact appropriately with co-workers; and respond appropriately to usual work situations and to changes in a routine work setting. AR 400-401.

In evaluating the opinion of Dr. MacPherson, the ALJ reasoned as follows:

> Dr. MacPherson diagnosed borderline intellectual functioning and opined a fair prognosis with continued medical services, mental health services, and medication compliance. She also opined moderate limitations in all areas of work-related mental functioning, which was defined as more than slight limitation, but the individual is still able to function satisfactorily. She opined moderate limits in the ability to understand, carry out, apply, and remember simple (one-two step) repetitive written and oral instructions; understand, carry out, apply, and remember complex detailed written and oral instructions; sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace; maintain effective social interaction on a consistent and independent basis with others including supervisors, coworkers, and the public; and adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek and responding and adapting appropriately to changes in a work setting. She opined the claimant could not handle funds in her own best interest. In a check box form, she also indicated moderate limitation in making judgments on simple and complex work-related decisions and in interacting with the public, coworkers, and supervisors.
>
> I have considered this report and find it persuasive, as it appears to be mostly consistent with and supported by Dr. Swanson's report and the little to no mental health treatment indicated in the record. This opinion tends to support an ability to perform simple work instructions with limited contact with others, no teamwork setting, and no contact with the general public. I note that Dr. MacPherson was able to examine the claimant and review Dr. Swanson's report, and her findings appear to be consistent with and supported by the overall record that does indicates some mental limitation in functioning, but an overall ability to perform daily tasks independently.

AR 27-28. The ALJ also found that Plaintiff retained the "residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can

9

perform simple work instructions with occasional contact with supervisors and coworkers, but not in a teamwork setting, and she can have no contact with the general public." AR 23.

The RFC did not completely account for the opined limitations in Dr. MacPherson's persuasive opinion. The simple work instructions, occasional contact with supervisors and coworkers, no teamwork setting, and no general public contact limitations address some of Dr. MacPherson's instruction and social interaction limitations. But Dr. MacPherson also opined moderate limits in Plaintiff's other abilities, including in the abilities to "respond appropriately to usual work situations and to changes in a routine work setting;" "sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace;" and to "adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek; and responding and adapting appropriately to changes in a work setting." AR 23, 27-28, 398, 400-401. Rather than explain the exclusion of those limitations, the ALJ solely notes that the "opinion tends to support an ability to perform simple work instructions with limited contact with others, no teamwork setting, and no contact with the general public" and the "findings appear to be consistent with and supported by the overall record that does indicates some mental limitation in functioning, but an overall ability to perform daily tasks independently." AR 28. Even accepting that limiting a claimant to simple, routine tasks accounts for some pace, attention, and concentration limitations, Dr. MacPherson's remaining limitations - such as the ability to adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek and responding and adapting appropriately to changes in a work setting – are not accounted for within this RFC. *See Stubbs*, 539 F.3d at 1174; AR 23, 398, 400-401. Absent explanation for failing to account for these limitations, the ALJ's RFC determination is not supported by substantial evidence. *Sahyoun*, 2020 WL 1492661, at *3; AR 23, 27-28, 398, 400-401.

Defendant argues that Dr. MacPherson's opined limitations are accounted for by the RFC limitations of simple work instructions, occasional contact with supervisors and coworkers, no teamwork setting, and no contact with the general public. (Doc. 19 at 7-8.) Defendant first cites several published and unpublished Ninth Circuit cases to support that an RFC with simple work instructions with limited social interaction accounts for opined limitations in responding to usual work

10

situations and changes in routine work setting; sustaining concentration, persistence, and pace; and stress in a competitive work environment. (*Id.*) However, these cases are distinguishable from the instant matter.

In *Stubbs-Danielson v. Astrue*, the Ninth Circuit noted that an "ALJ's RFC finding properly incorporated the limitations… related to pace and the other mental limitations regarding attention, concentration, and adaption. *Stubbs-Danielson*, 539 F.3d at 1174 (9th Cir. 2008). However, courts have frequently distinguished *Stubbs-Danielson* as inapplicable to cases with opined limitations beyond concentration, persistence, or pace. *Macias v. Saul*, No. 1:19-cv-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (distinguishing *Stubbs-Danielson* as "the moderate restrictions at issue here involve limitations in maintaining attendance and completing a normal workday, not limitations in concentration, persistence or pace"); *Harrell*, 2021 WL 4429416, at *6 (finding that *Stubbs-Danielson* did not "specifically address the extent to which a limitation to simple and routine tasks appropriately accounts for the limitations identified"); *Warren v. Saul*, No. 8:19-CV-02270-PD, 2021 WL 259435, at *5 (C.D. Cal. Jan. 26, 2021) (finding case factually distinguishable from *Stubbs-Danielson* where assessment that Plaintiff could perform work involving simple, repetitive tasks requiring only simple work-related decisions and involving only occasional changes in a routine work setting, with unlimited contact and interaction with supervisors as necessary to receive work-related instructions but otherwise only occasional interaction with coworkers, failed to address the moderate limitations found by physician in plaintiff's ability to maintain regular attendance, interact with a supervisor, or complete an eight-hour workday in a regular workplace); *Sayhoun*, 2020 WL 1492661, at *4 (noting factual distinction from *Stubbs-Danielson* where physician did not opine that plaintiff could sustain work involving simple, repetitive tasks despite his moderate limitations in maintaining regular attendance, completing a normal workday or work). As in those cases, Dr. MacPherson opined other moderate limitations beyond concentration, persistence, or pace. *See* AR 23, 27-28, 398, 400-401. *Stubbs-Danielson* therefore does not exempt the ALJ from needing to account for Dr. MacPherson's other opined limitations.

Plaintiff cites other unpublished Ninth Circuit decisions that are also distinguishable from the facts of this case. In *Rogers v. Comm'r of Soc. Sec. Admin*, the Ninth Circuit found that an RFC

11

limitation to simple routine tasks accommodated opined moderate limitations in the "abilities to understand, remember, and carry out detailed instructions and to respond appropriately to changes in the work setting." *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 F. App'x 15, 17-18 (9th Cir. 2012) (unpublished). In *Hughes v. Colvin* the Ninth Circuit found that any error in addressing a Global Assessment of Functioning score was harmless because the RFC accounted for "moderate difficulties in social functioning, concentration, and persistence, by restricting [plaintiff] to simple, routine, repetitive tasks in a job where she could work independently with no more than occasional public interaction." *Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015) (unpublished). In *Mitchell v. Colvin*, the Ninth Circuit relied upon *Stubbs-Danielson* and found that the ALJ accounted for "his own finding of moderate limitations in concentration, persistence, and pace" in the RFC limitation to "simple, repetitive tasks." *Mitchell v. Colvin*, 642 F. App'x 731, 732-33 (9th Cir. 2016) (unpublished).

Unlike those cases, Dr. MacPherson opined other moderate limitations beyond concentration, persistence and pace, including as to Plaintiff's "ability to adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek." AR 398, 400-401.  These cases do not address all of the moderate limitations opined to by Dr. MacPherson and therefore do not support Defendant's argument that all opined limitations have been accounted for.

Defendant also cites district court cases within this circuit to argue that Dr. MacPherson's opined limitations are accounted for within the ALJ's RFC.  (Doc. 19 at 7-9.)  However, Defendant also "acknowledges that district courts appear to be split on the question as to whether a restriction to simple tasks adequately captures various moderate limitations." (Doc. 19 at 8.)  Indeed, as discussed above, the caselaw "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations… identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption." *Harrell*, 2021 WL 4429416, at *6; *Lamar*, 2025 WL 318294, at *4; *Berenisia Madrigal*, 2020 WL 58289, at *5-6.  Defendant's cited caselaw therefore does not demonstrate that all of Dr. MacPherson's opined limitations were accounted for within the RFC.

Defendant further argues that the ALJ formulated Plaintiff's mental RFC was not just based upon Dr. MacPherson's opinion, but also upon other medical opinions, prior administrative medical findings, objective medical evidence, Plaintiff's reporting, Plaintiff's friend's reporting, and Plaintiff's lack of treatment history.  (Doc. 19 at 8.)  However, Defendant does not explain how the ALJ's inclusion of multiple sources in an RFC negates the requirement that the ALJ incorporate a persuasive opinion's limitations in the RFC or explain why the limitations were not included.  *Patterson*, 2024 WL 4216810, at *8; *Sahyoun*, 2020 WL 1492661, at *3.  This argument is therefore unavailing.

Accordingly, the ALJ's RFC determination is not supported by substantial evidence.

## B. Remedy

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted). On remand, the ALJ should specifically address the opined limitations in Dr. MacPherson's opinion.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED;
2. The agency's determination to deny benefits be REVERSED; and

3. The Clerk of this Court be directed to enter judgment in favor of Plaintiff Samly Milavong and against Defendant Commissioner of Social Security.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered**.  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 19, 2025**              /s/ *Barbara A. McAuliffe*              _
                                             UNITED STATES MAGISTRATE JUDGE

14